IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

BEAUFORT  DIVISION

| | |
|---|---|
| **Jeffrey William Crouchman,** ) | Civil Action No. 9:16-0804-CMC-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **Pickens County Council, Sheriff Rick** ) | **REPORT AND RECOMMENDATION** |
| **Clark, Captain Nix, Lt. Kristi Leopard,** ) | |
| **Sgt. Visage, Sgt Tomberlin,** ) | |
| **Deputy Evans, Officer Nowaczcki,** ) | |
| **Officer Hardy, Officer Talley and** ) | |
| **Officer Morales**, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, who at the time this action was filed was a pretrial detainee at the Pickens County Detention Center,[1] alleges violations of his constitutional rights by the named Defendants while he was housed at the Detention Center.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on November 10, 2016. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on November 15, 2016, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that

---

[1]Plaintiff is no longer incarcerated. See Court Docket No. 58 (Change of Address Notice).



if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. After initially failing to respond (See Court Docket No. 46), Plaintiff filed a response in opposition to the Defendants' motion January 9, 2017. The Defendants thereafter filed a reply memorandum on January 17, 2017.

The Defendants' motion is now before the Court for disposition.[2]

### Background and Evidence[3]

Plaintiff, a frequent filer of <u>pro se</u> litigation in this Court, has submitted a verified Complaint[4] containing a hodgepodge of claims and allegations. Plaintiff alleges that during the relevant time period he was a pretrial detainee at the Detention Center, that the Defendant Pickens County Council is responsible for the oversight and maintenance of the Detention Center, that the Defendant Sheriff Rick Clark is responsible for the care, health and safety of inmates at the Detention Center, and that the remaining Defendants are all employees of the Sheriff's Office and/or the Detention Center.

Plaintiff alleges that he was booked into the Detention Center on November 12, 2015, at which time he advised a "Sgt. Underwood" that he had a heart condition and that his situation had

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiffs, the party opposing summary judgment. <u>Pittman v. Nelms</u>, 87 F.3d 116, 118 (4th Cir. 1996).

[4]In this Circuit, verified complaints by <u>pro se</u> litigants are considered as affidavits with respect to any factual allegations contained therein that are based on personal knowledge. <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991).



not changed since he was there a few months earlier.  Plaintiff alleges that because of his physical limitations due to his heart condition and "obvious risk of harm if he was placed in general population", that B-Block was the best place for him to be housed.[5]  However, Plaintiff alleges that "immediately after being placed in B-Block, [he] observed filthy condition in the Unit, including fifty year old sinks and toilets that were corroded and full of mold, shower stall and bathroom walls and ceiling covered with black mold, brown water that periodically comes out of sink, filthy mold in and under rim of toilet, plumbing that does not work properly, sinks and toilets that backup and remain non-working for several days at a time, sometimes a week or more and requests to fix them are ignored, and the bathroom and common area where the shower is located is sometimes two inches deep of water mixed with urine, as well mold in cell".  Plaintiff further complains that he was not seen immediately by the medical staff during intake screening, even though he cannot miss a day of taking his medication because of his heart condition.  Plaintiff also complains that there is "no provision in jail policy for detainee's to receive needed meds immediately", and that, as of the filing of his Complaint, he was "still waiting to see mental health professional for his psychiatric needs and meds", complaining that he had been at the jail for "3 months now [and] still waiting".

Plaintiff further complains that telephone use is restricted and he is only allowed to use the telephone on Sundays and Wednesdays, usually between 7:30 and 8:00 a.m. which is "too early".  Plaintiff also complains that there is "no provision for calling your attorney".  Plaintiff further complains that toilet paper is only handed out once a week, and that inmates are denied toilet paper daily even if they "run out".  He also complains that there is no TV in B-Block, even though

---

[5]Plaintiff alleges that during his previous incarceration, he was housed in a single cell in B-Block in order to "avoid any inevitable physical harm due to any confrontation".

3



every other cell block has a TV as well as phone use daily.[6]  Plaintiff complains about not being allowed these privileges, even though he is not in B-Block for disciplinary reasons, and that he has had to "chose between being at risk of harm due to his health [while having] privileges or being safe with no privileges and living in filth".

Plaintiff alleges that inmates in B-Block are continuously being denied cleaning supplies, that when cleaning supplies are brought they consist of a "dirty mop bucket with water and sometimes pine sol or very little bleach, a dirty never washed mop head, a broom, a filthy broken dust pan", and a spray bottle with a watered down cleaner in it.  Plaintiff further complains that the brush provided for cleaning the toilet is "inappropriate" and does not allow inmates to "get under the rim".

Plaintiff alleges that when he was assigned to his cell there was dried feces on the wall and under the bunk, which another inmate told him was due to an inmate who had been in that cell who had a leaky colostomy bag that had leaked all over the place.  Plaintiff alleges that although he complained to Officers Morales, Talley, Harvey, Nowaczcki (all Defendants) and others he was not provided with "proper cleaning supplies or gloves to clean the feces".  Plaintiff specifically alleges that when he asked Officer Hamilton (not a Defendant) about getting some cleaning supplies on December 1, 2015, that she replied that he would be getting his cleaning supplies in the morning. Plaintiff complains that he was told this by Hamilton even though he had been "asking for a day". Plaintiff also alleges that he spoke to the Defendant Captain Nix on December 2, 2015 about the "filthy conditions in B-Block", and that Nix was "very adamant" about not being able to do anything because the Defendant Pickens County Council would not provide needed funds to purchase

---

[6]B-Block is an administrative segregation unit, and is not part of the general population.

4



adequate cleaning supplies, although he did tell Plaintiff that he would look into getting Plaintiff a

shower brush and "proper supplies" to allow Plaintiff to clean his cell.  Even so, Plaintiff complains

that it "never happened".

      Plaintiff alleges that on December 18, 2015 he was "let out to clean" after he had not

been given supplies and B-Block had not been cleaned "for a week".  Plaintiff alleges that he had

complained to two officers (neither of whom are named Defendants) that his constitutional rights

were being violated because his cell conditions were "disgustingly filthy", to which one of the

officers ("Jessica") responded that County Council "won't give funds to clean up the jail".  Even so,

"Jessica" provided him with a "small amount of bleach".  Plaintiff then goes on to complain about

how another inmate was treated on December 27, 2015.[7]

      Plaintiff alleges that on December 31, 2015 "water flooded in hall" due to a toilet and

sink in B-Block not working.  Plaintiff complains that sinks and toilets in B-Block would break or

malfunction and not be fixed "for days", and that on occasion Plaintiff had to be "let out to use the

common area bathroom because his toilet don't work".  Plaintiff also alleges that on January 11,

2016 he was "taken outside for REC" for the first time in five weeks and for only one hour.  Plaintiff

alleges that the next time he was taken out for REC was on January 29, 2016, and then again two

---

   [7]Plaintiff makes numerous references in his Complaint to problems other inmates were allegedly having or about things that had happened to other inmates.  However, Plaintiff cannot represent, or make claims on behalf of, other inmates in this lawsuit.  See Hummer v. Dalton, 657 F.2d 621, 625-626 (4th Cir. 1981)[a prisoner cannot act as a "knight-errant" for other]; Oxendine v. Williams, 509 F.2d 1405, 1407 & n. * (4th Cir. 1975)[a pro se prisoner unassisted by counsel cannot be an advocate for others in a class action]; Inmates v. Owens, 561 F.2d 560, 562-563 (4th Cir. 1977)[one pro se inmate does not have standing to sue on behalf of another inmate].  Therefore, the only allegations that have been set forth and discussed hereinabove are those claims that relate to this Plaintiff.  Myers v. Loudon Co. Pub. Sch., 418 F.3d 395, 401 (4th Cir. 2005)[finding that a pro se person's right to litigate for oneself does not create a similar right to litigate on behalf of others].



weeks after that. Plaintiff then goes on to continue to complain about a general lack of cleaning supplies, as well as about a sink backing up in a neighboring cell that was not fixed for four days.

Plaintiff complains that on January 27, 2016 the hall light filled with water during a rain storm from the roof leaking. Plaintiff complains that when the light was removed for repair, "live wires" were left hanging from the ceiling for "several days". Plaintiff then complains that his toilet either broke or stopped working on several occasions during January and February 2016, again causing him to have to use the common area bathroom during those occasions. Plaintiff alleges that on February 16, 2016 he tried to talk to the Defendant Lt. Leopard about "several issues", but that Leopard responded in an "extremely condescending tone and attitude". Plaintiff further alleges that he complained to Leopard about being "repeatedly denied" from being able to file a grievance on various issues he raises in this Complaint, but that Leopard told him the jail was not obligated to "provide any kind of notary or legal copy service or postage . . . .". Plaintiff further alleges that he had made requests to the Defendant Tomberlin and another officer (Underwood) for "copies of legal work needed to submit to the court", but was told that requests for notary service and legal copies had to go through Leopard. However, Plaintiff alleges that his requests to Leopard were "ignored for weeks".

Plaintiff further complains that the Detention Center has a policy of never giving out receipts for any transactions such as deposits or withdrawals from prisoner accounts, leaving inmates with no idea of the status of their account. Plaintiff alleges that when inmates complained about this situation, including to Lt. Leopard, nothing was done. Plaintiff also complains that B-Block does not have adequate fire safety - that there are no smoke alarms or sprinklers in the cells or halls, and no exhaust fans "anywhere in the jail". Plaintiff also complains that there are no fire evacuation



plans posted anywhere.  Further, the ventilation system is allegedly substandard, which Plaintiff claims causes a serious problem with dust and airborne mold spores that inmates are forced to breathe, especially in B-Block.  Plaintiff also complains that the vents are "filthy [and] in need of cleaning" as well as that there are no exhaust fans in the bathroom/shower.  Additionally, the plumbing is in disrepair.  However, Plaintiff alleges that all requests for grievances are denied, with the Defendants blaming County Council for not giving them sufficient funds to solve all these problems.

Plaintiff also complains that, in addition to the locks that are already on the doors, there are also chains and padlocks on cell doors in B-Block because the jail staff claims the doors can be opened.  Plaintiff complains that this is a fire safety hazard, as it requires two different keys to open the cell.  Plaintiff further complains that the jail does not have a law library, nor do inmates have any access to legal reference material or resources of any kind, including that Lt. Leopard insists on blocking all access to legal assistance or research by blocking computers from being able to access legal information on Google or other websites.  Plaintiff alleges that this has denied him proper access to the courts.

Plaintiff also complains that the food at the jail is "substandard", and that it is "very doubtful" that inmates daily calorie intake is more than 1,500 calories.  Plaintiff states that the typical menu "consists of a helping of grits and 2 slices of bread for breakfast, cereal on weekends, extremely thin slice of salami and bread everyday for lunch with potato chips everyday, and the dinners are very minimal with very limited nutritional value at all, if any".  Plaintiff alleges that the jail staff members, including the Defendants Tomberlin and Hardy, blame not having a better diet for inmates on poor funding from County Council.  Plaintiff also complains that, apparently due to



purported cuts in funding from County Council, indigent stamped envelopes were reduced from 2 per week to 2 every other week.

Plaintiff also complains that the jail has a "two book only policy" implemented by Lt. Leopard, wherein inmates are allowed to have only two books at a time. Plaintiff complains that this is because he is in B-Block, even though he is not there for disciplinary reasons. Plaintiff alleges that on or about February 8, 2016 a "stack of books" came to B-Block from operations, some of which were for the Plaintiff, but that the Defendants Tomberlin and Leopard would only allow Plaintiff to have access to two books at a time. Plaintiff complains that because of this policy he did not receive a "Christian book" that had been sent to him because he already had two books. Plaintiff also alleges that Leopard has instituted a blanket ban on all newspapers and magazines.

Plaintiff alleges that the jail does not have anywhere to house inmates with special needs unless they are put in administrative segregation with no privileges (such as the Plaintiff), which amounts to punishment. Plaintiff also alleges that in early February 2016 he and the other inmates in B-Block "were awoken to very strong paint fumes". Apparently some painting was going on, and Plaintiff complained that he was being "forced" to breath paint fumes with no air, fan, or fresh air source. Plaintiff alleges that when he complained, the Defendant Evans told him "I am doing the best I can". Plaintiff notes that Evans told him that they (the prison guards) were having to smell the same air, but Plaintiff alleges that that still "doesn't make it right . . . .". Plaintiff alleges that this happened again on February 27, 2016. Plaintiff further complains that the jail has a policy of not exchanging sheets or blankets, that sheets are expected to be put in a one foot by one and a half foot laundry bag which does not leave room for sheets to be washed adequately, and that he had the same blanket for three an a half months. Plaintiff also claims that the Defendants Morales and



8

Nowaczcki should be held liable for "trying to move [Plaintiff] back into population despite [his] medical condition".

Plaintiff alleges that the Defendants' failure to remedy these problems constitutes a deliberate indifference to his and other inmates' health and safety, as a result of which Plaintiff "has received serious physical and emotional injuries" due to his exposure to these conditions. Plaintiff also complains that the jail has a "policy of seizing cell phones and wallets and personal property and housing them, not allowing inmates to release them to family members", thereby causing an unconstitutional "loss of property". Plaintiff seek declaratory and injunctive relief, as well as monetary damages, to include punitive damages.

Plaintiff has attached to his Complaint a "memorandum" in support, as well as a "declaration". Plaintiff's "declaration" repeats many of the allegations of his Complaint, and adds that since "coming back into this facility" he has developed a serious sinus infection along with an ear infection and a sore throat. Plaintiff states that he "now cannot get rid of this infection" even though he acknowledges having been given two different kinds of antibiotics.[8] Finally, Plaintiff has provided "declarations" from other jail inmates in which these inmates echo many of the same complaints made by the Plaintiff, including that their meals are not adequate, they are not provided with adequate or proper cleaning supplies, and complaining generally about the conditions at the jail. See generally, Plaintiff's Verified Complaint, with attached Exhibits.

In support of summary judgment in the case, the Defendant Kristy Leopard has submitted an affidavit wherein she attests that she is a Lieutenant at the Pickens County Detention

---

[8]Plaintiff notes in this "declaration" that he has filed another civil action addressing separately some of these medical issues.



Center, that the Plaintiff was last detained at the Detention Center from November 2015 till March 23, 2016, and that he was released from custody on March 23, 2016 and "has not returned".

Leopard attests that when Plaintiff was at the Detention Center he was housed in B-Block as opposed to the general population at his request. Even so, Leopard attests that while prison staff do not have access to Plaintiff's medical records, he has been seen many times by Southern Health Partners while he was detained at the Detention Center, and that no instructions have ever been received from Southern Health Partners that Plaintiff is required to be segregated from the general population. Rather, Leopard attests that Plaintiff was housed in B-Block at his request. Leopard also attests that B-Block was originally designed as a holding cell area and is adjacent to the control room. It contains several individual cells which open to a common area, with each individual cell containing either one or two beds, a toilet and a sink. Additionally, there is also a toilet, a sink and a shower in the open common area.

Leopard attests that this area is used to house prisoners who, for various reasons, have separation orders from prisoners in other areas of the facility as well as prisoners who wish to be under closer supervision due to medical complaints. Leopard attests that Plaintiff does not fall into either category. Further, even though new detainees are typically temporarily housed in the common area (not the individual cells) until they bond out or are classified and assigned to a Block based upon their classification, Plaintiff was not housed in the common area but had his own cell adjacent to the common area. Leopard attests that for most of the time Plaintiff was detained at the Detention Center, he was housed in a single cell where he would have been the only occupant, although for a limited time he was housed in a double cell, where he shared his cell with another occupant, each having their own bed.



Leopard attests that the control room area immediately adjacent to B-Block is where detainees are processed and travel to and from throughout the day, and that for the security of the various detainees as well as staff, the B-Block area has to stay on lock down. Leopard reiterates, however, that Plaintiff chose to be housed in this area under these conditions, as he had no separate orders, protection orders, or medical orders which would have otherwise kept him from being housed in the general population. Leopard further attests that there is a grievance procedure at the Detention Center, that Plaintiff was never denied the right to file a grievance, nor has there ever been any repercussions for detainees who choose to utilized the grievance procedure. However, Plaintiff chose not to utilize the grievance procedure and would instead occasionally send her written notes, copies of which Leopard has attached to her affidavit as Exhibit A. Leopard further attests that other than the issues raised in the handwritten notes attached to her affidavit, the Summons and Complaint in this matter was her first notice with respect to almost all of the issues raised by Plaintiff in the Complaint.

Leopard attests that, as previously noted, Plaintiff had a toilet in his cell and there was also a toilet in the common area. Leopard further attests that if a detainee's toilet and/or sink are temporarily not working, they are given access to a working toilet and sink at their request, that Plaintiff would have always had access upon request to a toilet and sink in the event his was not working, and that when there are any plumbing problems at the Detention Center they put in a work order with Pickens County and all repairs are made by the County. Leopard also attests that the Detention Center is aware that there has been an issue with mold in the shower area, that as a result Pickens County retained a remediation service, and that the mold was removed in May 2016, which was after Plaintiff would have been released. Leopard further attests that in order to remove the



mold they had to find a separate facility to house an entire block of inmates, as this procedure could not be performed while inmates were housed in the area, and that therefore the facility's time table to remediate mold was based on the availability of space at other detention centers to temporarily house inmates. Leopard attests that this is why the mold remediation was not able to be scheduled until May.

Leopard attests that all medical services at the Detention Center are provided pursuant to contract with Southern Health Partners, that Southern Health Partners does a medical intake screening of all detainees within the first twenty-four hours of their stay at the facility, and that any referrals to specialists are done by Southern Health Partners. With respect to phone access, Leopard attests that detainees in B-Block are allowed access to the phone on Wednesdays and Sundays, and that while the time the phone becomes available begins at 7:30 a.m. on Sunday, there would be other opportunities to use the phone during the week other than 7:30 a.m. on Sundays. Leopard further attests that the phone access policy for B-Block is designed to limit ingress and egress from the B-Block area as a result of the security issues referenced earlier in her affidavit with regard to the amount of detainee ingress and egress in the control room area.

With respect to toilet paper, Leopard attests that detainees are not charged for toilet paper and are allowed to receive a new roll of toilet paper when they have used the roll they have been given. As such, although not more than one roll of toilet paper is allowed in an inmates's cell at one time, inmates are allowed unlimited toilet paper. As for general cleaning supplies, Leopard attests that because arriving and departing inmates are kept in the area near the control room during the period of time they are either awaiting a bond hearing or classification, it is sometimes not possible to bring any cleaning supplies into the common area or cell area B-Block until after 9 a.m.

12



However, after 9 a.m. cleaning supplies are delivered and available for detainees to use to clean their cells and the common area, if they so choose. Leopard attests that the common area does not serve as permanent housing, and to the extent the common area is to be cleaned and maintained, it is the responsibility of the detainees who are housed in the B-Block area. Leopard attests that cleaning supplies provided include a mop, a mop bucket, cleaning liquids and a shower brush, and there would not have been any three month period where a shower brush was not delivered to B-Block, as alleged in the Complaint.

Leopard further attests that she is familiar with the detainee referred to in the Complaint who had a colostomy bag. Leopard attests that the inmate housed in B-Block with a colostomy bag was there several months prior to Plaintiff's arrival, that her experience with this inmate was that he is extremely conscientious regarding cleanliness, and that he is currently housed with other detainees in a pod where they have had no complaints regarding his cleanliness or hygiene. Further, Leopard attests that during the time period this inmate was housed in B-Block as well as subsequent thereto, there would have been cleaning supplies available for both this inmate as well as for subsequent detainees, including the Plaintiff, to mop the floor area if that was needed. Leopard further attests that if there had been any kind of issue in the cell area beyond a routine necessity to clean, that trustees would have been assigned to clean the area. However, they had no reports from Plaintiff regarding any issues of the nature alleged in the Complaint, nor is there any reason there should have been feces in Plaintiff's cell prior to his arrival, or that it should have remained in his cell during his stay.

Leopard attests that at no time did she or, to her knowledge, anyone on her staff speak with Plaintiff about County Council budgeting issues and their impact on the Detention Center.

13



Leopard further attests that regardless of funding, the County is required to provide detainees with meals in accordance with SCDC guidelines, and that any funding issues have no impact on the food budget for the detainees or the facility's ability to provide the required food allowances for detainees. Leopard further attests that the County paid for the mold remediation previously discussed, and that there have been no budget cuts affecting cleaning supplies or repairs to toilets, sinks and showers. Leopard attests that there also are not, and have never been, any "live wires" hanging from the ceiling in B-Block. Leopard attests that while some of the wiring in the Detention Center is visible in the ceiling area, there are not exposed live wires.

Leopard attests that because of the location of the detainees in B-Block, they do not have open access to the recreation yard in the same manner as the detainees in general population, and as a result the detainees in B-Block receive recreation either on Mondays, Tuesdays, and Fridays, or on Wednesdays and Thursdays, alternating with other inmate populations. As such, Leopard attests that the only reason Plaintiff would not have been able to have recreation would have been if the weather did not permit it. Leopard also attests that she had occasion to meet with Plaintiff on one occasion as a result of the handwritten letter he sent to her which is attached to her Affidavit as Exhibit A. Leopard attests that, for the most part, that conversation had to do with the medicated tar shampoo Plaintiff had, which is the subject of another lawsuit Plaintiff has pending against the Detention Center. Leopard attests that Plaintiff also raised the issue regarding providing notary services, but attests that it is the facility's understanding on advice from counsel that they are not required to offer notary services to detainees. Even so, Leopard attest that during that meeting she asked Plaintiff what he needed to have notarized, and that he had nothing at that time. Further, to the extent Plaintiff complained at that time, or anytime, about his toilet, Leopard attests that they

14



would have contacted county maintenance to have it repaired if necessary. Leopard attests that her second conversation with the Plaintiff was on the day that he was discharged from the facility, at which time he refused to leave the jail.

Leopard attests that the Detention Center does not give receipts for transactions in the canteen, but receipts are provided to detainees for medical services. However, a detainee has the right to check his account balance at any time through the automated phone system during the time the detainee has phone privileges, which for the Plaintiff (as he alleges) would have been twice a week. As for Plaintiff's fire safety allegations, Leopard attests that the Detention Center is inspected by both the Pickens County Fire Marshal and the South Carolina Department of Corrections (SCDC), and that the facility has not been cited for any kind of safety issues regarding smoke alarms, sprinklers, exhaust fans, or with respect to the additional padlocks that they have on some of the doors where the locks are defective. Leopard further attests that the air vents in B-Block as well as the rest of the Detention Center are cleaned annually.

Leopard attests that the Detention Center does not have a law library, as detainees' have access to their attorneys to provide for legal materials. Further, the food served at the Detention Center is in accordance with SCDC guidelines and is not and has never been impacted by the budget received from County Council. Leopard attests that the Detention Center allows each detainee to have two books in their cell at one time, which restriction is for security reasons, as more paper in the cells can present an opportunity for vandalism and creation of a fire hazard. As for sheets and blankets, Leopard attests that detainees have the ability to turn in their sheets and blankets with their laundry and have them washed and returned to them two times a week. See generally, Leopard Affidavit, with attached Exhibits.



The Defendant Carrie Nowaczck has submitted an affidavit wherein she attests that she is an Officer at the Pickens County Detention Center. Nowaczck attests that she never denied Plaintiff cleaning supplies, that each cell is provided with a mop, mop bucket, shower brush, toilet brush and cleaning fluids to clean the cell, and that it is the responsibility of the detainee to maintain cleanliness in their cell area, including their cell. It is also the responsibility of all of the detainees on a block to clean the common areas. Nowaczck attests that while there are days when the delivery of cleaning supplies is delayed until the temporary detainees housed in the B-Block area are moved, that when this occurs supplies are either delivered later in the day or delivered upon request later in the day. Further, Nowaczck attests that the Detention Center has a grievance procedure, and that she has never denied Plaintiff or any detainee the opportunity to file a grievance. See generally, Nowaczck Affidavit.

The Defendant Tabitha Tomberlin has submitted an affidavit where she attests that she is a Sergeant at the Pickens County Detention Center. Tomberlin attests to the same facts as Nowaczck with respect to the availability and provision of cleaning supplies at the Detention Center, and attests that she never denied Plaintiff any cleaning supplies. Tomberlin further attests that she has also never denied Plaintiff or any detainee the opportunity to file a grievance. See generally, Tomberlin Affidavit. The Defendants Spike Evans, James Hardy, Kirk Talley and Kathern Vissage have all also submitted affidavits attesting that they are employees at the Detention Center, and further attesting to the same facts as Nowaczck and Tomberlin. See generally, Defendants Affidavits.

In opposition to the Defendants' motion for summary judgment, Plaintiff has provided a "Declaration" in which he attests that when he was booked into the Pickens County



Detention Center on November 12, 2015, that Sergeant Tyler Underwood determined that B-Block would be the best place for him to be housed due to his medical issues, and that this was Underwood's decision, not his.  Plaintiff attests that he did not request this location, that he only agreed with Underwood and consented to it.  Plaintiff further repeats many of the allegations from his Complaint concerning the conditions at the jail, including his conversations with the Defendant Captain Nix and Lt. Leopard about these conditions.  Plaintiff further attests that after he was released from the Pickens County Detention Center, he was transferred to the Greenville County Detention Center, where he requested to be examined by medical for breathing problems and a sinus and throat infection.  Plaintiff attests that he also learned that he had "MRSA".  Plaintiff attests that he was released from the Greenville Detention Center on August 12, 2016, at which time he went to stay at the Christ-Central Midlands Retreat, which is a shelter for homeless veterans, where he is living at the present.  Plaintiff attests that he continues to be treated for a sinus infection as well as for breathing and throat problems.  Plaintiff also attests that he saw a physician sometime after August 2016, and that when he told the physician about the black mold, the physician said that "that was more than likely the cause" of his respiratory problems.  See generally, Plaintiff's "Declaration".

Plaintiff has also attached some copies of declarations from other inmates he submitted as exhibits in another civil case he has pending in this Court, but which do not appear to reference the specific issues raised in this particular lawsuit.  Plaintiff has also submitted a copy of a "Consult" request relating to a pulmonary function test performed on December 2, 2016, which concluded that Plaintiff had "moderate airflow obstruction.  Gas diffusion is moderately reduced. Low normal total lung capacity".  No additional comments or recommendations are noted.  See Court Docket No. 49-3, p. 5.  Plaintiff has also included a copy of what purports to be an Inmate



Orientation pamphlet provided by the Pickens County Sheriff's Office, with Plaintiff highlighting where magazines and newspapers have been deemed contraband by the Pickens County Sheriff pursuant to South Carolina Code § 24-7-155. See Court Docket No. 49-3, p. 9. Finally, Plaintiff has also attached a "To Whom It May Concern" letter from inmate Jeremy Kitchens, complaining of many of the same conditions Plaintiff complains about in this lawsuit. See generally, Plaintiff's Exhibits.

### Discussion

The Defendants seek summary judgment on all of the Plaintiff's claims. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-875 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

Here, after careful review of the allegations and evidentiary exhibits submitted, the



undersigned finds for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

## I.

Initially, the Defendant "Pickens County Council" is entitled to dismissal as it is not a proper party Defendant. The "Pickens County Council" is the governing body for Pickens County, consisting of individual council members who comprise the membership of the Council, none of whom have been individually named as party Defendants in this case. Cf. Carter v. South Carolina et al., No. 14-1842, 2014 WL 5325234 at * * 4, 9 (D.S.C. Oct. 17, 2014) [Noting an office, "group of people" or "use of such collective terms to name a § 1983 defendant has been found improper and inadequate".].

To the extent the proper party Defendant for Plaintiff to have named would have been Pickens County, local government entities such as counties can be liable under § 1983 for a deprivation of constitutional rights caused by "an official policy or custom" of the county. See Monell v. Dep't. of Social Services, 436 U.S. 658, 690-691 (1978); Crowley v. Town of Enfield, No. 14-1903, 2015 WL 4162435, at * 5 (D.Ct. July 9, 2015) ["under Monell local government units can be sued directly for damages . . . ."], citing Kentucky v. Graham, 473 U. S. 159, 167, n. 14 (1985); Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999). Hence, assuming arguendo that Plaintiff's constitutional rights were violated by one or more of the jail officers named as Defendants in this case, Pickens County (if it had been named as a party Defendant) could be held liable if the jail officers' unconstitutional actions "implement[ed] or execute[d] a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers". Monell, 436 U.S. at 690-691; Spell v. McDaniel, 591 F.Supp. 1090, 1380 (4th Cir. 1984).



In this case, however, Defendants correctly note that, under South Carolina law, it is the Sheriff of the County who is responsible for the operation of county detention centers, not the County. See S.C.Code Ann. § 24-5-10 [Providing that it is the Sheriff who has custody of the jail in his (or her) County and is responsible for safely keeping individuals received for custody therein]. As such, it is the Defendant Sheriff Rick Clark, not Pickens County (and certainly not the individual members of Pickens County Council), who is responsible for running and maintaining the Pickens County Detention Center. See Cobb v. State of South Carolina, No. 13-2370, 2014 WL 4220423 at * 2 (D.S.C. Aug. 25, 2014) [discussing Fourth Circuit and South Carolina law holding that since County has no control over operations or policies of the jail, it cannot be held liable for events that take place there]. Plaintiff has presented no evidence to dispute the existence and applicability of this state law to his claims, or to show that Pickens County was responsible for any of the policies or decisions made at the Detention Center with respect to his care and custody. Baber, 977 F.2d at 874-875 [To survive summary judgment, opposing party must respond to the motion with specific facts showing a genuine issue for trial].

Therefore, as Plaintiff has failed to establish any basis for liability on the part of Pickens County Council (or Pickens County) with respect to any of his claims, this Defendant is entitled to summary judgment and dismissal in this case.

## II.

Secondly, since Plaintiff is no longer incarcerated at the Detention Center, to the extent he is seeking injunctive and/or declaratory relief, his claims are moot. Slade v. Hampton Roads Reg'l Jail, 407 F.3d 243, 248-249 (4th Cir. 2005)[holding that former detainee's request for injunctive relief was moot], and quoting Spencer v. Kemna, 523 U.S. 1, 15 (1998) [Addressing



whether possible risk of future incarceration might meet the "capable of repetition" exception to mootness, and holding that "we are . . . unable to conclude that the case-or-controversy requirement is satisfied by general assertions or inferences that in the course of their activities respondents will be prosecuted for violating valid criminal laws. We assume respondents will conduct their [future] activities within the law".]; <u>Taggart v. Oklahoma</u>, 74 Fed.Appx. 880, 882 (10th Cir. 2003)[inmate's claims concerning his medical needs against prison officials for injunctive relief were rendered moot by his release]; <u>LaFlame v. Montgomery County Sheriff's Dep't.</u>, 3 Fed.Appx. 346 at * * 1 (6th Cir. Jan. 31, 2003)[same].

Therefore, Plaintiff's claim for injunctive and/or declaratory relief in this case should be dismissed. <u>See United States Parole Commission v. Geraghty</u>, 445 U.S. 388, 397 (1980) [Noting that the issue in controversy must "exist at the commencement of the litigation . . . [and] must continue throughout its existence"]; <u>Powell v. McCormack</u>, 395 U.S. 486, 496 (1969) ["[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome"].

### III.

Plaintiff's claims for monetary damages survive his release from the Detention Center; <u>see Mawhinney v. Henderson</u>, 542 F.2d 1, 2 (2d Cir. 1976); and as public officials, the remaining Defendants are all subject to suit for damages in their individual capacities in a § 1983 lawsuit. <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989); <u>Hafer v. Melo</u>, 112 S.Ct. 358, 365 (1991); <u>Goodmon v. Rockefeller</u>, 947 F.2d 1186, 1187 (4th Cir. 1991). As a pretrial detainee during the time period set forth in the Complaint, Plaintiff's claims against these Defendants is evaluated under the due process clause of the Fourteenth Amendment, rather than the Eighth



Amendment, which is used to evaluate conditions of confinement for those convicted of crimes. <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 (1979). Even so, the underlying standard for determining whether any named Defendant violated Plaintiff's constitutional rights is essentially the same. <u>See</u> <u>Martin v. Gentile</u>, 849 F.2d 863, 870 (4th Cir. 1988) [Holding that the Fourteenth Amendment guarantees at least Eighth Amendment protections]. However, for the reasons set forth hereinbelow, the undersigned does not find that the evidence is sufficient to create a genuine issue of fact as to whether any named Defendant violated Plaintiff's constitutional rights.

**Medical issues**. Plaintiff makes only limited reference in the allegations of his Complaint to any medical claims he may have, probably because he is already pursuing other lawsuits in this Federal District Court relating to alleged medical deprivations he allegedly suffered during his period of incarceration at the Detention Center. <u>Aloe Creme Laboratories, Inc. v. Francine Co.</u>, 425 F.2d 1295, 1296 (5th Cir. 1970)[a federal court may take judicial notice of the contents of its own records]. For purposes of this action, Plaintiff merely complains that there is "no provision in jail policy for detainee's to receive needed meds immediately", and generally that he was otherwise dissatisfied with his medical care. However, Plaintiff has submitted no evidence to support a claim that any named Defendant was deliberately indifferent to his serious medical needs.[9]

<u>Levy v. State of Ill. Dept. of Corrections</u>, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997)

---

[9]To proceed with a claim for denial of adequate medical care, Plaintiff must have evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Farmer v. Brennen</u>, 511 U.S. 825, 837 (1994); <u>Scarbo v. New Hanover County</u>, 374 Fed. Appx. 366, 370 (4th Cir. Apr. 1, 2010) [Pretrial detainee must produce evidence of acts or omissions sufficiently harmful to constitute deliberate indifference to the inmate's serious medical needs]; <u>Sosebee v. Murphy</u>, 797 F.2d 179 (4th Cir. 1986); <u>Wester v. Jones</u>, 554 F.2d 1285 (4th Cir. 1977); <u>Russell v. Sheffer</u>, 528 F.2d 318 (4th Cir. 1975); <u>Belcher v. Oliver</u>, 898 F.2d 32 (4th Cir. 1990).



["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting <u>Farmer</u>, 511 U.S. at 837; <u>House v. New Castle County</u>, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].

 While Plaintiff alleges in his Complaint that he is suffering sinus or respiratory problems that he contends are the result of his stay at the Detention Center, he has submitted no actual medical evidence that shows this to be the case, or to tie any serious medical issues he may be having to anything that happened to him while at the Detention Center.[10]  <u>Scheckells v. Goord</u>, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing <u>O'Connor v. Pierson</u>, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]); <u>see</u> <u>also</u> <u>Drakeford v. Thompson</u>, No. 09-2239, 2010 WL 4884897, at * 3 (D.S.C. November 24, 2010), citing <u>Larken v. Perkins</u>, 22 Fed. Appx. 114, 115 (4th Cir. 2001)[Noting that non-movant's "own, self-serving affidavit containing conclusory assertions and unsubstantiated speculation, . . . [is] insufficient to stave off summary judgment"].

 In any event, Defendants argue, and the undersigned agrees, that any medical claims asserted by the Plaintiff in this lawsuit are encompassed by the claims that were asserted by Plaintiff in a previous lawsuit against many of these same Defendants. See <u>Crouchman v. Southern Health Partners, et al.</u>, No. 16-426.  Summary judgment against the Plaintiff was entered in that case on September 22, 2016, and the doctrine of <u>res judicata</u> precludes not only the re-litigation of issues that

---

[10]Plaintiff's lone medical exhibit, what purports to be a "consult" relating to a pulmonary function test performed in December 2016 (9 months after Plaintiff's release from the Detention Center), is not by itself evidence to show that any Defendant named in this case was deliberately indifferent to a serious medical need of the Plaintiff.

23



were actually decided in that case, but also any issues that could have been presented for determination in that case. <u>Watkins v. M & M Tank Lines, Inc.</u>, 694 F.2d 309, 311 (4th Circuit 1982). Plaintiff has not offered any evidence, or even any argument, to dispute Defendants' contention that his medical claim is barred by <u>res judicata</u> due to his already having litigated this claim in a previous lawsuit. Rather, he simply states that some claims he has presented may "overlap", and that this lawsuit involves "additional Defendants". <u>Plaintiff's Response Brief</u>, p. 9. These statements do not establish a defense to Defendants' <u>res judicata</u> arguments.[11]

     Therefore, this claim should be dismissed.

     **General conditions of confinement claims**. As for the remainder of Plaintiff's confinement claims, Plaintiff's Complaint throws the proverbial "kitchen sink" at the Defendants, setting forth a litany of general complaints he had about the conditions under which he was held while at the Detention Center. However, while Plaintiff undoubtedly did not like being detained, the fact remains that during the time period set forth in the Complaint he was a prisoner in a county jail facility, not a hotel, and it should be expected that the conditions in such a setting are often times less than ideal. <u>Cf</u>. <u>Hadley v. Peters</u>, No. 94-1207, 1995 WL 675990 *8 (7th Cir. 1995), <u>cert</u>. <u>denied</u>, 116 S.Ct. 1333 (1996) ["prisons are not required to provide and prisoners cannot expect the services of a good hotel."] (quoting <u>Harris v. Fleming</u>, 839 F.2d 1232, 1235 (7th Cir. 1988)). As such, in order to proceed with this lawsuit Plaintiff must have presented evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to an excessive

---

   [11]Based on the facts of this case, the "privies" element of <u>res judicata</u> is satisfied here due to the connections between the Defendants from both cases. <u>See</u> <u>Saleno v. Corzine</u>, 449 F.Appx. 118, 122-123 (3rd Cir. 2011).



risk to his health or safety. <u>Levy v. State of Ill. Dept. of Corrections</u>, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting <u>Farmer</u>, 511 U.S. at 837; <u>see</u> <u>also</u> <u>Grayson v. Peed</u>, 195 F.3d 692, 695 (4th Cir. 1999)["Deliberate indifference is a very high standard - a showing of mere negligence will not meet it."]; <u>A.P. ex rel. Bazerman v. Feaver</u>, No. 04-15645, 2008 WL 3870697 at *12 (11th Cir. Aug. 21, 2008)["[D]eliberate indifference requires a much higher standard of fault than mere or even gross negligence . . . ."]. Plaintiff has failed to present any such evidence. Rather, he simply sets forth a series of conclusory claims and allegations about the conditions at the jail - but he has failed to submit any actual *evidence* sufficient to show that any particular complaint rises to the level of a constitutional violation so as to survive summary judgment. <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)[Courts need not assume the truth of legal conclusions couched as factual allegations]; <u>House</u>, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim]; <u>cf</u>. <u>Rish v. Johnson</u>, 131 F.3d 1092, 1096 (4th Cir. 1997) ["only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"].

While Plaintiff complains that the conditions in this jail were generally "filthy" and unhealthy, he nonetheless also admits in his verified Complaint that cleaning supplies were provided, although not as often as he liked and not to his standards.[12] <u>Farmer</u>, 511 U.S. at 834-835 [noting that nothing in the evidence presented to the court showed that plaintiff was ever denied the minimal

---

[12]Specifically, Plaintiff complains in his Complaint that when cleaning supplies were brought they consisted of a "dirty mop bucket with water and sometimes pine sol or very little bleach, a dirty never washed mop head, a broom, a filthy broken dust pan", and a spray bottle with a watered down cleaner in it.



civilized measure of life's necessities, or that any defendant engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"]. Plaintiff has also provided no evidence to show that his claims relating to toilet facilities, access to a telephone, access to an ability to exercise, or other general conditions of his confinement were so onerous as to reach a constitutional magnitude. See generally Rish, 131 F.3d at 1096 ["only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; cf. Beverati v. Smith, 120 F.3d 500, 504 and n. 4 (4th Cir. 1997) [accepting Plaintiff's allegations for purposes of summary judgment that cells were unbearably hot, infested with vermin, smeared with human feces and urine, flooded with water from a leaky toilet above, and where food provided was cold and provided in smaller portions, but holding that such conditions were not "so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life."]; Harris, 839 F.2d at 1235 [prisoner deprived of toilet paper, soap, toothpaste and toothbrush while kept in filthy, roach infested cell suffered no punishment when no physical harm resulted].

Plaintiff's allegation in his Complaint that sometimes his toilet or sink would be broken "for days" and that on occasion he had to be "let out to use the common area bathroom because his toilet don't work" does not establish a constitutional violation. Cf. Kidwell v. Buchanan, No. 93-15056, 1993 WL 230224 at **1 (9th Cir. June 29, 1993) [Where temporary restriction of amenities was found not to be cruel and unusual punishment]; see also Miska v. Middle River Regional Jail, No. 09-172, 2009 WL 1916726 at * 4 (W.D.Va. July 2, 2009) [Where court found that, although the conditions of which the pretrial detainee complained (including, but not limited to, less than desirable sanitation conditions) were no doubt uncomfortable and frustrating, he had not



alleged facts indicating that the conditions were imposed on him with the intent to punish, or that he had suffered any significant serious injury.]. [Rule 12 Motion to Dismiss]. Nor does Plaintiff's Complaint that he only had access to a telephone twice a week set forth a constitutional claim. Ellis v. Pierce City, GA, 415 Fed.Appx. 215, 218 (11th Cir. 2011) [holding that a pretrial detainee's lack of access to hot water in his cell, denial of lack of access to hot water in his cell, denial of television, limited access to a telephone, and limited social time with others fell "far short of the sort of 'extreme deprivations' that are required to amount to clearly established unconstitutional conditions of confinement] (quoting Chandler v. Crosby, 379 F.3d 1278, 1298 (11th Cir. 2004)); cf. Tarney v. Boles, 400 F. Supp.2d 1027, 1040 (E.D. Mich. 2005) [inmate's loss or restriction of telephone privileges for disciplinary reasons is not considered an atypical significant hardship, even when the disciplinary charges are allegedly false, and therefore does not implicate a liberty interest protected by due process].

As for Plaintiff's complaints about his food and the portions that were provided to inmates, he has provided no evidence from a nutritional expert or any other evidence to establish that the food (which Plaintiff concedes in his Complaint was regularly provided) served at the jail was so inadequate as to amount to a violation of his constitutional rights. Tafari v. Weinstock, No. 07-693, 2010 WL 3420424 at * 7 (W.D.N.Y. Aug. 27, 2010)["[T]o establish a valid claim that the denial of food (or the denial of a medically proscribed diet) constitutes [a constitutional] violation, one must establish that there was a 'sufficiently serious condition' that resulted from the food not being received."]; Cody v. Newborn, Nos. 09-6016, 09-6026, 10-6014, 2012 WL 1078601 at * 9 (W.D.Ark. Feb. 29, 2012) (quoting Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir. 1992) [Noting that while "[p]risoners have a right to nutritionally adequate food; . . . [Plaintiff] presented no



evidence that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food".]), aff'd, 2012 WL 1078517 (W.D.Ard. Mar. 20, 2012), aff'd 501 Fed. Appx. 608 (8th Cir. 2013); House, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim].

   Similarly, Plaintiff's general allegations about how often he was allowed outside to exercise, that his sheets and blankets (although he concedes they could be washed) were not washed to his satisfaction, that he was only allowed to have two books in his cell at a time, along with his myriad of other complaints,[13] all also fail due to Plaintiff's failure to submit any probative evidence of the existence of a constitutional violation. See generally Chavis v. Fairman, No. 94-1503, 1995 WL 156599 at * * 5-6 (7th Cir. Apr. 6, 1995)["Generally, even dramatic restrictions on outdoor exercise do not violate [the due process clause] so long as prisoners have ample opportunity to enjoy indoor activity."]; Curtis v. Fairman, No. 95-5538, 1997 WL 159319 at * 4 (N.D.Ill. Mar. 24, 1997) [Finding that detainee in segregation who was denied out-of-cell restriction for a twenty-nine day period failed to state a claim where he did not assert that he was unable to exercise within the confines of his cell or that his health was threatened by the denial of recreation]; Isaac v. Fairman, No. 92-3875, 1994 WL 63219, * 5-6 (N.D.Ill. 1994) [allegation that prisoner was provided only one uniform and denied adequate opportunity to wash did not state claim]; Corey v. Reich, No. 02-2801, 2004 WL 3090234 (D.S.C. March 9, 2004) [Upholding SCDC policy restricting prisoners' ability

---

  [13]Notably, even though Plaintiff claims in his "Declaration" opposing summary judgment that he did not request placement in B-Bloc, where these more restrictive conditions existed, and that it was Underwood's decision to place him there, one of the claims Plaintiff makes in his Complaint is that Morales and Nowaczcki should be held liable for "trying to move [Plaintiff] back into population despite [his] medical condition".



to receive magazines, books, mail, or other materials in the MSU, and finding that this policy did not violate the prisoners' constitutional rights], aff'd by 2004 WL 1730327 (4th Cir. Aug. 3, 2004); Buff v. Stirling, No. 14-3022, 2016 WL 1253184 at * 4 (D.S.C. Mar. 31, 2016) [upholding policy of limiting reading materials in SMU for inmates not placed in SMU due to behavioral problems];[14] Wiles v. Ozmint, No. 05-2111, 2006 WL 2260136, at * 10 (D.S.C. Aug. 7, 2006)[Prohibition on the receipt by mail of magazines, newspapers and books in the MSU, and restriction on photographs being allowed in MSU cells, held constitutional].

In any event, Plaintiff has failed to present any evidence (aside from his own conclusory allegations that he "has received serious physical and emotional injuries" due to his exposure to these conditions) that he suffered any injury whatsoever as a result of the conditions he complains of.  See Scheckells, 423 F.Supp. 2d at 348 ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; cf. Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1188-1189 (11th Cir. 1994)["An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed"], overruled in part by Hope v. Pelzer, 536 U.S. 730, 739 n. 9 (2002).  This lack of any evidence of a compensable injury is fatal to Plaintiff's damages claim based on his general conditions of confinement.  Scinto v. Stansberry, 841

---

[14]Plaintiff contends that he was not in the B-Block more restrictive housing due to any disciplinary or behavioral issues.



F. 3d 219, 225 (4th Cir. 2016) [To be "sufficiently serious" in a condition of confinement case, the deprivation must be so extreme that it poses a serious or significant physical or emotional injury from the challenged condition]; Holley v. Johnson, No. 08-629, 2010 WL 2640328 at * * 9-15 (W.D.Va. June 30, 2010)[noting that while excessive force claim does not require showing of a significant injury, condition of confinement claim does]; see also Harris v. Fleming, 839 F.2d at 1235 [prisoner deprived of toilet paper, soap, toothpaste and toothbrush while kept in filthy, roach infested cell suffered no punishment when no physical harm resulted]; Wilson v. Cook County Bd. of Commissioners, 878 F.Supp. 1163, 1167-1168 (N.D.Ill. 1995) [pretrial detainee failed to establish that overcrowding, inadequate staffing, inadequate opportunity for exercise, and inadequate grievance procedures in detention facility violated detainee's due process rights where detainee failed to show remedial injury]; cf. Strickler v. Waters, 989 F.2d 1375, 1379, 1381 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993)["In order to withstand summary judgment on [constitutional] challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions"]; Shakka v. Smith, 71 F.3d 162,166 (4th Cir. 1995)["In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions', or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions"]; Beverati, 120 F.3d at 505, n. 5 [finding that inmate's alleged confinement for six months in deplorable conditions failed to state Eighth Amendment claim where there was no evidence that conditions "resulted in serious physical or emotional injury or the grave risk of such harm"].  These claims are therefore all without merit.



**Access to courts**.  To the extent Plaintiff is asserting a claim of lack of access to the courts, he has again failed to present any evidence sufficient to create a genuine issue of fact as to such a claim.  There is no evidence any named Defendants' failure to provide him with notary services or provide him with copy services has prevented him from pursuing court actions.  Cf. Johnson v. Moore, 948 F.2d 517, 521 (9th Cir. 1991), citing Sands v. Lewis, 886 F.2d 1166, 1169 (9th Cir. 1989)["Numerous courts have rejected any constitutional right to free and unlimited photocopying"]; Howard v. Ozmint, No. 08-3171, 2009 WL 4809427 at * 7 (D.S.C. Dec. 9, 2009) [Dismissing Plaintiff's claim for lack of access to the courts where plaintiff failed to show he suffered any irreparable injury as a result of not having access to a notary].  Indeed, Plaintiff's voluminous filings both in this case as well as in his other cases filed in this Court belie any claim of lack of access to the courts.  Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) ["Courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"].

Further, in order to pursue a claim for denial of access to the Courts, Plaintiff must not only allege facts sufficient to show that he was denied access to the courts, but that he suffered some actual injury of specific harm as a result.  Lewis v. Casey, 518 U.S. 343, 349-353 (1996)[Inmate alleging denial of access to the courts must be able to demonstrate "actual injury" caused by the policy or procedure at issue]; Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) [Dismissal of access to court claim proper where inmate relied on conclusory allegations and failed to identify any actual injury]; Hause v. Vaught, 993 F.2d 1079, 1084-1085 (4th Cir. 1993).  Plaintiff has failed to make any such showing.  This claim is therefore without merit.

**Denial of property**.  At one point in his Complaint, Plaintiff also appears to be



asserting a property claim, as he complains that the jail has a "policy of seizing cell phones and wallets and personal property and housing them, not allowing inmates to release them to family members", thereby causing an unconstitutional "loss of property". No further information is presented with respect to this allegation nor has any evidence been submitted relating to this claim and the undersigned does not find any violation of Plaintiff's constitutional rights in the allegations of the Complaint with respect to this issue.

There is no indication in Plaintiff's allegations that his personal property has been "lost" or that his personal property is being destroyed or forfeited somehow pursuant to any jail policy. Even if this Court were to assume that Plaintiff's personal property was somehow lost or mishandled by correctional officers during the time it was supposed to be being retained pursuant to any such policy, he has available state court remedies to pursue such a claim; see S.C.Code Ann. § 15-69-10, et. seq.; and because South Carolina has an adequate post-deprivation remedy for an alleged deprivation of property, Plaintiff's due process rights were not violated, even if it is assumed a correctional officer lost or mishandled his personal property. Hudson v. Palmer, 468 U.S. 517-518 (1984); McIntyre v. Portee, 784 F.2d 566-567 (4th Cir. 1986); Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005); see also Ricci v. Paolino, No. 91-1994, 1992 WL 63521 at **2 - **3 (1st Cir. April 1992). Cf. Longmoor v. Nilsen, 329 F.Supp.2d 289 (D.Conn. July 23, 2004).

**Grievances**. Finally, to the extent Plaintiff's claims include accusations that one or more of the named Defendants mishandled or improperly handled his grievances, that is not a claim cognizable in this Court in a § 1983 action, as there is no constitutional right to access to a prison grievance procedure. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) [existence of a prison grievance procedure does not confer any



substantive right upon inmates]; Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Brown v. Dodson, 863 F.Supp. 284 (W.D.Va. 1994) [inmates do not have a constitutionally protected right to a grievance procedure]; Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill. 1982) [even where a state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights]; Burnside v. Moser, 138 Fed.Appx. 414, 415-416 (3d Cir. June 30, 2005). Therefore, the Detention Center's failure to follow its grievance procedures (even assuming that occurred in this case) does not give rise to a § 1983 claim. Spencer v. Moore, 638 F.Supp. 315, 316 (E.D.Mo. 1986) [holding that an inmate grievance procedure is not constitutionally required]; see also McGuire v. Forr, No. 94-6884, 1996 WL 131130, at *1 (E.D.Pa. March 21, 1996), aff'd, 101 F.3d 691 (3d Cir. 1996) [creation of a grievance system by a state does not create any federal constitutional rights, as prisoners are not constitutionally entitled to a grievance procedure]; Moore v. Sergent, No. 01-1271, 2001 WL 1355298 (6th Cir. Oct. 26, 2001); cf. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) [prison officials may place reasonable limits on prisoner's access to grievance procedure].

   Further, even if the Court were to assume for purposes of summary judgment that one or more of the Defendants violated jail polices in their handling of Plaintiff's complaints or grievances, the violation of such policies also does not constitute a violation of Plaintiff's constitutional rights, and is therefore not assertable in a § 1983 action. See Keeler v. Pea, 782 F.Supp. 42, 44 C.D.S.C. 1992); cf. Scott v. Hamidullah, C/A No. 3:05-3027-CMC-JRM, 2007 WL 904803 *5 n. 6 (D.S.C. March 21, 2007) (citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)); Johnson v. S.C. Dep't of Corrections, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that defendants did not follow their own



policies or procedures, standing alone, does not amount to a constitutional violation."] (citing Riccio, 907 F.2d at 1469 [if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]).

**IV.**

By reaching the conclusion that no compensable constitutional violation has been shown in the evidence presented to this Court, the undersigned does not intend to signal a lack of concern over Plaintiff's complaints about the conditions under which he was held while he was incarcerated at the Pickens County Detention Center. However, while Plaintiff may or may not have some state law claim or administrative process he could pursue with respect to the conditions complained about, in the absence of some evidence of a significant injury suffered by the Plaintiff as a result of conditions deemed to be unconstitutional, or other accompanying factors not present in this case, the undersigned does not find that Plaintiff has presented a genuine issue of fact as to whether his *constitutional* rights have been violated sufficient to survive summary judgment. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care];  see Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right]. Therefore, the Defendants are entitled to summary judgment in this case.

**Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed.**

34

The parties are referred to the Notice Page attached hereto.

_____

Bristow Marchant
United States Magistrate Judge

February 3, 2017
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**


The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

